******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS MARRA *v.* COMMISSIONER
OF CORRECTION
(AC 38033)

Keller, Prescott and Harper, Js.

*Syllabus*

The petitioner, who had been convicted in two separate criminal cases of
multiple offenses, including conspiracy to commit kidnapping in the
first degree, attempted kidnapping in the first degree, and murder, sought
writs of habeas corpus, claiming that his attorneys in both cases had
rendered ineffective assistance. The cases were subsequently consoli-
dated. The day before his habeas trial was set to begin, after multiple
postponements, the petitioner filed a withdrawal of the habeas action.
Despite the filing, the habeas court required the petitioner to appear
the next day, with counsel, and canvassed the petitioner on the record
regarding his decision to withdraw the case. The habeas court noted
the withdrawal and deemed it to be with prejudice. Less than one month
after he withdrew the habeas action, the petitioner filed another petition
for habeas corpus, claiming ineffective assistance of his prior habeas
counsel for their failure to adequately challenge the effectiveness of the
petitioner's trial and appellate counsel in the underlying criminal cases.
The trial court rendered judgment dismissing the petition after hearing
evidence on the respondent Commissioner of Correction's special
defenses, including deliberate bypass, by which the court can deny relief
to a petitioner who has intentionally given up rights or privileges by
bypassing orderly court procedure and surrendering any remedies. The
trial court concluded that the deliberate bypass doctrine applied, there-
fore depriving the court of subject matter jurisdiction. On the granting
of certification, the petitioner appealed to this court, claiming that the
trial court improperly gave preclusive effect to the ruling of the prior
habeas court that the petitioner's withdrawal was with prejudice because
no hearing on the merits had commenced pursuant to statute (§ 52-
80), and that the trial court improperly concluded that the doctrine of
deliberate bypass barred his action. *Held*:

1. The trial court did not impermissibly rely on the prior habeas court's
ruling that the petitioner's withdrawal was with prejudice, but, rather,
made its own independent ruling on the merits under the circumstances
to determine that the petitioner could not maintain the present action:
the petitioner's waiver of his right to go forward with the habeas trial
was made expressly and on the record before the prior habeas court,
the petitioner participated personally in the decision to withdraw the
petition and signed the withdrawal form after consultation with his
attorney, and the prior habeas court's canvass made abundantly clear
that the decision to terminate the case was the petitioner's, made know-
ingly and without force or pressure; furthermore, the petitioner engaged
in procedural chicanery by filing the petition in an attempt to undermine
the order of the prior habeas court, and such gamesmanship is a limita-
tion on the general rule that a party has a right to unilaterally withdraw
litigation prior to a hearing on the merits.

2. This court did not address the issue of whether the trial court improperly
applied the deliberate bypass doctrine, as it was not necessary to reach
that claim because of the resolution of the petitioner's first claim; this
court concluded, however, that the form of the trial court's judgment
was improper because the trial court's determination that the prior
habeas action should be deemed to be withdrawn with prejudice did
not implicate the subject matter jurisdiction of the court, and as such,
the trial court should have denied, rather than dismissed, the petition.

Argued January 17—officially released July 4, 2017

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J. [motion for permission to amend
pleading]; Sferrazza, J. [judgment].)

*Procedural History*

Two petitions for writs of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the cases were consolidated; thereafter, the court, *Oliver*, *J.*, granted the petitioner's motion for permission to amend his pleading; subsequently, the court, *Sferrazza*, *J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Improper form of judgment*; *judgment directed*.

*Cheryl A. Juniewic*, assigned counsel, for the appellant (petitioner).

*Emily D. Trudeau*, assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Thomas Marra, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly dismissed his eighteen count petition, which alleged claims of ineffective assistance of counsel against his prior habeas attorneys, because the court improperly (1) relied on a decision of the prior habeas court deeming his withdrawal of that action as being "with prejudice" and (2) concluded that the deliberate bypass doctrine barred his action. We conclude that only the form of the habeas court's judgment is improper and, accordingly, reverse the judgment on that limited ground.

The record reveals the following relevant facts and procedural history of this habeas appeal, which derives from two separate criminal cases and their subsequent posttrial proceedings. With regard to the first case (Noel case), the petitioner was found guilty, following a jury trial, of one count of conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (A), two counts of attempted kidnapping in the first degree in violation of General Statutes §§ 53a-49 and 53a-92, one count of arson in the second degree in violation of General Statutes § 53a-112 (a) (1) (B), two counts of larceny in the second degree in violation of General Statutes § 53a-123 (a) (1), and one count of accessory to kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (A). *State* v. *Marra*, 215 Conn. 716, 718–19, 579 A.2d 9 (1990). He was subsequently sentenced to sixty-five years of incarceration. Id., 719.

The relevant facts underlying the Noel case are discussed at length in our Supreme Court's opinion affirming that judgment. They may be summarized as follows.

Sometime during 1981, the petitioner began operating a criminal enterprise that involved selling stolen automobiles to J. W. Ownby, who lived in Kansas City, Missouri. Id., 720. In 1982, the petitioner hired Richard Noel, the victim, to drive the stolen automobiles to Ownby, and Ownby and Noel developed a friendly relationship. Id. In 1983, Ownby terminated almost all of his dealings with the petitioner and began dealing primarily with Noel. Id. The petitioner became "aggravated" with the situation, and his relationships with both men deteriorated. Id.

In November, 1983, during the course of a police investigation into auto theft in the Bridgeport area, Noel implicated the petitioner in statements to the police, and the petitioner later became aware of Noel's conversations with the police. Id., 721. On January 23, 1984, a neighbor of Noel "awoke at approximately 2 a.m. to the sound of a male voice, coming from outside,

screaming: 'No, no!' ''; observed two men quickly carrying the limp body of another man, presumably Noel, by his arms and legs down the sidewalk toward a parked van in which they tossed him; and, later that morning, "observed a large puddle of blood near the door of the building, a clump of dark brown hair near the puddle, blood splattered from the puddle over to the place where the van had been parked, and a set of keys." Id., 722–23. The petitioner later burned the van, and he and his associates dumped a barrel, presumably containing Noel's body, into the harbor in Stratford. See id., 723–24.

Subsequently, the petitioner enlisted some of his associates to participate in a scheme to steal money from Noel's bank account, which continued until the bank closed the account in March, 1984. See id., 724–25. In addition, the petitioner filed a lawsuit to collect on a promissory note in the amount of $18,000 on which Noel appeared as the maker and the petitioner as the payee; that suit resulted in a judgment in favor of the petitioner. Id., 725.

As previously indicated, the petitioner appealed from his judgment of conviction, and our Supreme Court affirmed the judgment of the trial court. See id., 739. Thereafter, the petitioner filed a petition for a writ of habeas corpus, alleging ineffective assistance of trial and appellate counsel in the Noel case, and the habeas court, *Bishop, J.*, dismissed the petition and denied the petition for certification to appeal. *Marra* v. *Commissioner of Correction*, 51 Conn. App. 305, 305, 721 A.2d 1237 (1998), cert. denied, 247 Conn. 961, 723 A.2d 816 (1999). The petitioner subsequently appealed the habeas court's decision to this court, and this court dismissed the appeal. See id., 310.

With regard to the second case (Palmieri case), the petitioner was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a (a) and sentenced to sixty years of incarceration. *State* v. *Marra*, 222 Conn. 506, 508, 610 A.2d 1113 (1992). The relevant facts underlying the Palmieri case were set forth in our Supreme Court's opinion affirming that judgment as well.

"On February 6, 1984, the [petitioner] asked [Nicholas] Byers to drive the fifteen year old victim, another associate of the [petitioner], to the [petitioner's] house later that day. At the same time, the [petitioner] asked [Frank] Spetrino [an associate of his] if he would help him put the victim in a barrel. That evening, Byers drove the victim [Alex Palmieri], Spetrino and Tamara Thiel, the victim's girlfriend, to the [petitioner's] house. The [petitioner], the victim, Byers and Spetrino entered the [petitioner's] garage, while Thiel remained in the car.

"In the garage, the [petitioner] and the victim argued about the [petitioner's] desire that the victim leave Con-

necticut and reside for a time in Italy, and the victim's refusal to do so. When the matter was not resolved to the [petitioner's] satisfaction, he handed Spetrino an aluminum baseball bat and told Spetrino not to let the victim leave the garage. Thereafter, as the group began to exit the garage, Spetrino struck the victim in the head with the bat. After Spetrino had hit the victim from one to three times, the [petitioner] said, 'Let's get him in the refrigerator.' Spetrino then began to drag the victim toward a refrigerator that was located inside the [petitioner]'s garage. As he was being dragged, the victim began to speak incoherently, and the [petitioner] said, 'Shut up Alex. You didn't go to Italy.' When the victim failed to quiet down, the [petitioner] struck him on the head with the bat numerous times. The additional blows made the victim bleed heavily and caused some of his brain tissue to protrude from his skull. The [petitioner], Byers and Spetrino then placed the victim into a large refrigerator, and the [petitioner] closed and padlocked the door. The men then loaded the refrigerator into the back of a rented van, and the [petitioner] and Spetrino drove the van to a parking area near the Pequonnock River, where the river empties into the harbor in downtown Bridgeport. After making several holes in the refrigerator with an axe so that it would sink, the [petitioner] and Spetrino slid the refrigerator into the water and it floated away. Although a police dive team searched the harbor for the victim's body and the refrigerator for a period of five months, the divers could locate neither. The victim has not been seen or heard from by his family or friends since February 6, 1984." Id., 508–10.

The petitioner appealed from the judgment of conviction, and our Supreme Court affirmed the judgment of the trial court. See id., 539. Thereafter, on November 25, 1993, the petitioner filed a petition for a writ of habeas corpus, alleging ineffective assistance of trial and appellate counsel in the Palmieri case, and the habeas court, *Zarella, J.*, dismissed the petition. On appeal, this court affirmed the habeas court's dismissal.[2] *Marra* v. *Commissioner*, 56 Conn. App. 907, 743 A.2d 1165, cert. denied, 252 Conn. 949, 747 A.2d 525 (2000).

Subsequently, the petitioner filed two additional habeas actions alleging ineffective assistance of his prior habeas counsel in both the Noel and Palmieri cases. Those two actions eventually were consolidated under docket number CV-05-4000275 (CV-05). As discussed in the habeas court's memorandum of decision in the present case, the petitioner's habeas trial in the CV-05 action "was first scheduled to begin in February 2010. At the request of the petitioner, trial was postponed to . . . August, 2010. For unknown reasons, the trial was again rescheduled to . . . October 4, 2011. The petitioner again requested a postponement and the case was reassigned a 'hard' and firm trial start date of October 23, 2012, [with] Judge Pavia presiding.

"However, the day before trial was to begin, the petitioner executed a withdrawal of the habeas action on October 22, 2012. The petitioner signed the withdrawal form as [did] counsel. Despite the withdrawal filing, Judge Pavia required the petitioner and counsel to appear before her on October 23, 2012. Judge Pavia and [the] respondent's counsel both expressed their readiness to proceed with the habeas trial, but [the] petitioner's counsel reiterated the petitioner's desire to withdraw the case.

"Judge Pavia canvassed the petitioner on the record regarding his decision to withdraw the case and relinquish his opportunity to prove his allegations against previous habeas counsel. The judge recounted the lengthy procedural history and the fact that the trial had been postponed multiple times. Judge Pavia warned the petitioner that attempts to refile would be met with opposition by the respondent [Commissioner of Correction] and that such refiling might be dismissed summarily because of the withdrawal.

"The judge ascertained that the petitioner's decision to terminate the litigation was made after consultation with counsel and without coercion of any sort and was a product of the petitioner's free will. The petitioner acknowledged the judge's admonitions but still wished to withdraw his case."

Judge Pavia deemed the withdrawal to be with prejudice,[3] stating: "For what it's worth, I am going to just put this on the record. I understand that there's an issue in terms of whether or not this is with prejudice or without prejudice. And while there may not be any case law that addresses the issue of prejudice in such a matter, I do want to place some things on the record for the next judge if in fact this issue ever is addressed again.

"As indicated, we are here today for the first day of trial. This trial date was set many months ago. We were accommodating a request, a special request, which came in from Rockville to accommodate the [petitioner] because he had some serious health concerns and we wanted to be able to accommodate his needs so that he was able to attend the trial in the best manner that he possibly could. And so this court agreed to take the case.

"The case is not necessarily a short habeas petition and did need at least a week to two weeks of trial time, as I was told from counsel. And on several occasions, we cleared our matters here in this court where we only have a single trial judge to be able to accommodate the petitioner's matter. In addition, we had addressed the idea of depositions taking place before the trial began, specifically the deposition of Attorney [Frank] Riccio, who is one of the main [witnesses with respect to the] claims of ineffectiveness in terms of the petition-

er's habeas petition. That deposition was scheduled and rescheduled on several occasions.

"I know that the state is—or the respondent is indicating that they're not going to ponder as to why the deposition did not go forward, but I think it's worth noting for the record that it was not the respondent who was not available. It was also not the deponent who was not available, but for one reason or another, the matter was called off. So it was not the respondent calling it off, it was not the deponent calling it off. And I think that matter will probably become more developed as time goes on.

"This court has not only set aside the time in terms of trial, but the clerk gave up her time by way of setting afternoons, and even met with the attorneys and marked all the exhibits for this matter so that we'd be ready to go in an effective way today. The . . . respondent is ready to begin, and has, according to . . . much discussion in chambers, been actively pursuing their readiness for this trial for some time and are prepared to go forward today. The court is ready to go forward today.

"I note the withdrawal of the action after a full canvass of the matter and the ramifications of that canvass. And to the extent that this matter can be deemed to be with prejudice, it would be this court's opinion that it should be."

On November 14, 2012, that is, less than one month after he withdrew the CV-05 action before Judge Pavia, the petitioner filed the present habeas action.[4] In his fifth amended petition dated March 26, 2015,[5] the petitioner alleged in eighteen counts that his prior habeas attorneys in both the Noel and Palmieri cases rendered ineffective assistance of counsel. More specifically, the petitioner alleges, inter alia, that the petitioner's prior habeas counsel in the Noel case, Attorney Raymond Rigat, did not adequately challenge the effectiveness of the petitioner's appellate counsel, Attorney Timothy Pothin, and his trial counsel, Attorney Riccio; and that the petitioner's prior habeas counsel in the Palmieri case, Attorney Thomas Conroy, failed to adequately challenge the effectiveness of the petitioner's trial counsel in that case, Attorney Riccio. In his return,[6] the respondent pleaded the special defenses of procedural default, deliberate bypass, res judicata,[7] and laches.[8]

The habeas court, *Sferrazza, J.*, was scheduled to begin trial on the petitioner's claims on May 4, 2015. That day, however, prior to hearing evidence, Attorney Fox stated that the parties were in agreement that "it would be simpler for [the court] to . . . decide whether [it] would want to rule on [the special defense] issues . . . if [the respondent] prevails, the trial is not going forward, so it would make sense to deal with them now. " Judge Sferrazza agreed, and the parties

presented evidence, which included the testimony of the petitioner, on the limited issues posed by the respondent's special defenses. Later that day, Judge Sferrazza orally ruled that the petitioner's action was dismissed.

In his written memorandum of decision dated May 7, 2015, Judge Sferrazza made the following findings: "[T]he petitioner testified that his decision to withdraw the case and his responses to Judge Pavia were clouded by the effects of illness and/or medication. The court finds this testimony unworthy of belief. He signed the withdrawal form on October *22*, 2012, after discussions with counsel. His replies to Judge Pavia the next day were cogent and belie his assertion of diminished comprehension.

"His counsel, on October 23, 2012, revealed that the reason for the withdrawal was predicated on counsel's inability to arrange to depose Attorney Riccio, who was seriously ill around that date. Habeas counsel feared that Attorney Riccio might be unable to testify as to his version of events at the habeas trial because of his deteriorating health. He died a few months later in 2013.

"Habeas counsel's explanation for withdrawal on the eve of trial was due to a lack of confidence in proving the habeas on a habeas case if the trial proceeded. Attorney Wallace remarked, 'The fact that [Attorney Riccio] is our main witness, that that—without his testimony, *this trial would go nowhere*' . . . .

"It must be noted that the petitioner chose to *terminate* the case rather than request additional time to secure whatever useful information Attorney Riccio might possess. Recall that Attorney Riccio had testified at the earlier habeas trials . . . . Presumably, he was available for discussion with new habeas counsel during the seven year period between January, 2005, when the previous habeas on a habeas case was filed, and October, 2012. . . . As mentioned above, the habeas trial was twice postponed at the petitioner's behest." (Citation omitted; emphasis in original.)

Ultimately, Judge Sferrazza concluded that "Judge Pavia's canvass made abundantly clear that [the petitioner's] decision to terminate his case was, indeed, *his* decision, made knowingly and without force or pressure. A petitioner ought not be permitted to withdraw a habeas case at the moment of trial simply based on fear of failure if the trial were to proceed, without incurring the consequence of finality." (Emphasis in original.) He then concluded that the deliberate bypass doctrine applied and dismissed the petition due to a lack of subject matter jurisdiction. This appeal followed.

We begin by setting forth the applicable standard of review. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing

court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . .” (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 157 Conn. App. 701, 704, 117 A.3d 1003, cert. granted in part, 318 Conn. 903, 122 A.3d 632 (2015).

I

The petitioner first claims on appeal that, in determining that the prior habeas action was withdrawn with prejudice, Judge Sferrazza improperly gave preclusive effect to the prior ruling of Judge Pavia in the CV-05 action, which the petitioner claims was improper because no hearing on the merits had commenced pursuant to General Statutes § 52-80 as interpreted by *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 130 A.3d 268 (2015). In response, the respondent contends that the previous ruling in the CV-05 action was permissible because *Kendall* is distinguishable from the present case, and “any mechanical application of § 52-80 to permit the petitioner to deliberately forgo pursuit of his known claims, only to reassert them years later when all of the available evidence is more stale and some of the most critical evidence . . . is now forever unavailable, would completely ignore the concerns for finality reflected in our habeas jurisprudence, be irreconcilable with the policies behind our habeas rules of procedural default, and completely turn on their head the equitable principles that serve as the foundation for habeas corpus relief.” We conclude that Judge Sferrazza did not impermissibly rely on Judge Pavia’s prior ruling but, rather, made his own independent ruling, and, on the merits, we agree with the respondent.

As an initial matter, we address the faulty premise upon which the petitioner’s first claim rests, i.e., that Judge Sferrazza’s dismissal was predicated solely on Judge Pavia’s prior ruling. Having thoroughly reviewed Judge Sferrazza’s memorandum of decision, we construe his ruling to be an independent determination that the petitioner’s conduct in the previous CV-05 proceeding constituted a withdrawal with prejudice. More specifically, we conclude that although Judge Sferrazza relied upon the factual findings of Judge Pavia with respect to the CV-05 action, he did not treat Judge Pavia’s legal conclusions as res judicata[9] on the issue of whether the petitioner’s withdrawal should be deemed to be with prejudice.

We, therefore, turn to whether Judge Sferrazza correctly determined that *this* habeas action could not be maintained in light of the petitioner’s conduct in the prior proceeding. We conclude that Judge Sferrazza properly determined that the petitioner could not main-

tain the present action because his withdrawal of the CV-05 action should, under the circumstances, be deemed to be with prejudice.

Section 52-80 provides in relevant part: "The plaintiff may withdraw any action . . . before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action . . . only by leave of court for cause shown." "The term 'with prejudice' means '[w]ith loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim . . . .' " *Mozell* v. *Commissioner of Correction*, 147 Conn. App. 748, 756, 83 A.3d 1174, cert. denied, 311 Conn. 928, 86 A.3d 1057 (2014). "The disposition of withdrawal with prejudice exists within Connecticut jurisprudence. . . . Indeed, the disposition of withdrawal with prejudice is a logically compelling disposition in some circumstances. A plaintiff is generally empowered, though not without limitation, to withdraw a complaint before commencement of a hearing on the merits. . . . A plaintiff is not entitled to withdraw a complaint without consequence at such hearing." (Citations omitted.) Id., 757. "The decision by a habeas court to condition a withdrawal of a habeas petition on that withdrawal being 'with prejudice' is, when authorized, a decision left to that court's discretion." *Kendall* v. *Commissioner of Correction*, supra, 162 Conn. App. 28, citing *Mozell* v. *Commissioner of Correction*, supra, 759–60.

As previously mentioned, the petitioner cites to *Kendall* v. *Commissioner of Correction*, supra, 162 Conn. App. 23, as support for his argument that the withdrawal of the CV-05 action cannot properly be labelled "with prejudice" because a hearing on the merits had not yet commenced at the time he requested it. In *Kendall*, which was decided several months after Judge Sferrazza dismissed the petition in the present case, the petitioner wished to withdraw his habeas petition without prejudice *after* the court had taken the bench for his scheduled habeas trial but *before* any evidence or arguments concerning the merits of the case had been presented. Id., 26–27. The habeas court would not permit him to do so on the ground that his "habeas hearing [had] commenced for purposes of [General Statutes] § 52-80 when the court took the bench to hear evidence on the date and time assigned." (Internal quotation marks omitted.) Id., 28. On appeal, we reversed the judgment of the habeas court, concluding that "no hearing on the merits can be said to have commenced within the meaning of the statute at the time the petitioner stated that he wished to withdraw his petition and the court ruled that it would allow a withdrawal only with prejudice."[10] Id., 48, 51.

Significantly, however, the court in *Kendall* recognized that in certain circumstances, a withdrawal of a

petition *prior* to the commencement of a hearing on the merits could be deemed to be with prejudice: " '[A] plaintiff is *generally* empowered, *though not without limitation,* to withdraw a complaint before commencement of a hearing on the merits . . . .' " (Emphasis added.) Id., 29, quoting *Mozell* v. *Commissioner of Correction,* supra, 147 Conn. App. 757. Moreover, this court, in *Kendall,* was careful to make clear that the only question it was asked to resolve in that case was whether a hearing on the merits had commenced for purposes of applying § 52-80. *Kendall* v. *Commissioner of Correction,* supra, 162 Conn. App. 29 ("[n]either party disputes that § 52-80 applies to habeas actions or that, under the appropriate circumstances, a habeas court can order that a withdrawal of a habeas petition be with prejudice; rather, the primary point of contention concerns whether the habeas court properly determined that the petitioner could not withdraw his petition without prejudice because a hearing on the merits had commenced"). Accordingly, as neither party here disputes that a hearing on the merits had not yet commenced at the time the petitioner requested a withdrawal of his CV-05 action, *Kendall* does not resolve the question before this court.

One year after *Kendall* was decided, this court decided *Palumbo* v. *Barbadimos,* 163 Conn. App. 100, 134 A.3d 696 (2016).[11] *Palumbo* stands for the principle that although the party initiating an action generally enjoys a right to withdraw litigation unilaterally prior to a hearing on the merits, a later filing of an identical case by that party can be deemed an abuse of that right if it constitutes "procedural chicanery," that is, it "offends the orderly and due administration of justice" and is intended "to avoid the consequences of [his or] her [previous] waiver." Id., 103–104. The defendant in *Palumbo* sought to have a civil action restored to the docket, because the plaintiff had previously withdrawn that original action and filed a second, identical action to avoid a bench trial that was the consequence of the plaintiff having missed the deadline for claiming the action to the jury trial list. Id., 102. We agreed with the defendant that his motion to restore the original action to the docket should have been granted, holding that "the broad authority granted to a [party] pursuant to § 52-80 to unilaterally withdraw an action prior to a hearing on the merits does not automatically extend to [that party] the additional right to commence an essentially identical action following that withdrawal if the primary purpose for doing so is to undermine an order of the court rendered in the prior litigation . . . ." Id., 115.

We recognize that, in the present case, the consequence of the petitioner's withdrawal of his previous CV-05 action is that he is now precluded from raising the CV-05 habeas claims entirely, a harsher result than that occasioned in *Palumbo.* In the present case, how-

ever, the petitioner's waiver of his right to go forward with the habeas trial in the CV-05 case was made expressly and on the record before Judge Pavia, as opposed to in *Palumbo*, where the plaintiff's waiver of his right to a jury trial was done by operation of statute once he missed the deadline for claiming the action to a jury trial list. See General Statutes § 51-239b. As Judge Sferrazza highlighted in his memorandum of decision, the petitioner here "participated personally in the decision to withdraw the previous habeas matter the day before trial was to begin. He signed the form on October 22, 2012, after consultation with his lawyer. Judge Pavia's canvass made abundantly clear that his decision to terminate his case was, indeed, *his* decision, made knowingly and without force or pressure." (Emphasis in original.) To the extent that the petitioner believed it was improper for Judge Pavia to canvass him and to enter the withdrawal with prejudice, he could have appealed her decision,[12] rather than file a second, identical habeas petition.

Additionally, in relying on Judge Pavia's prior findings and the record in that proceeding,[13] Judge Sferrazza found that "[h]abeas counsel's explanation for withdrawal [of the CV-05 action] on the eve of trial was due to a lack of confidence in proving the habeas on a habeas case if the trial proceeded. Attorney Wallace remarked, 'The fact that [Attorney Riccio] is our main witness, that that—without his testimony, *this trial would go nowhere*.' " (Emphasis in original.) Judge Sferrazza also stated that Attorney Riccio presumably was "available for discussion with new habeas counsel during the seven year period between January, 2005, when the [CV-05] habeas on a habeas case was filed, and October, 2012 [when the withdrawal of that action occurred]," and that "[a]ny lack of preparedness was attributable to the petitioner rather than the respondent or the court." Judge Sferrazza did not find that the petitioner's previous withdrawal was due to the petitioner's own health problems, and he found that the petitioner lacked credibility when he testified before the court.[14]

Ultimately, Judge Sferrazza considered the procedural posture of this case to implicate the doctrine of deliberate bypass,[15] noting that the petitioner chose to terminate the CV-05 case rather than request additional time to secure whatever useful information Attorney Riccio could have provided as evidence. The argument could also be made that the court's disposition falls more neatly under other doctrines such as waiver or abuse of the writ.[16] Regardless of the label, the effect is the same. Judge Sferrazza's independent determination that the petitioner's conduct in the previous CV-05 proceeding constituted a withdrawal with prejudice was legally correct, despite the fact that a hearing on the merits had not yet commenced, because the petitioner engaged in "procedural chicanery" by filing the present

petition in an attempt to undermine the order of the court in the CV-05 action. As previously discussed, we have considered such gamesmanship to be a limitation on the general rule that a party has a right to withdraw litigation unilaterally prior to a hearing on the merits. See *Palumbo* v. *Barbadimos*, supra, 163 Conn. App. 103–104.

## II

The petitioner next claims on appeal that Judge Sferrazza improperly applied the doctrine of deliberate bypass.[17] Although the basis of Judge Sferrazza's reliance upon the deliberate bypass doctrine is less than clear, we conclude that it is unnecessary to reach the respondent's second claim because of our prior conclusion that the petitioner's withdrawal of his CV-05 petition was with prejudice. Because we conclude that the withdrawal was with prejudice, the petitioner is barred from raising identical claims in the present petition. See *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 756. Accordingly, it would serve no practical purpose to analyze whether Judge Sferrazza's reliance on the deliberate bypass doctrine was appropriate under the circumstances of this case.

Finally, we note that Judge Sferrazza's determination that the prior action should be deemed to be withdrawn with prejudice does not implicate the subject matter jurisdiction of the court over this petition. Accordingly, he should have denied, rather than dismissed, the petition, and the form of the judgment is thus improper.

The form of the judgment is improper; the judgment dismissing the petition for habeas corpus is reversed, and the case is remanded with direction to render judgment denying the petition for a writ of habeas corpus.

In this opinion the other judges concurred.

[1] The habeas court subsequently granted certification to appeal from the judgment.

[2] We note that the petitioner also has filed several other habeas petitions. Specifically, he filed an application for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, raising the following claims with regard to his trial in the Palmieri case: "(1) during the initial closing argument and the rebuttal argument, the State improperly commented on his failure to testify; (2) the trial court violated his right to a fair trial by giving misleading examples of reasonable doubt during the jury instructions; (3) the trial court improperly charged the jury that it could convict him as an accessory to murder; (4) insufficient evidence was produced at his probable cause hearing to establish that the victim was dead; (5) the trial court improperly admitted testimony regarding lost evidence; (6) the trial court improperly admitted irrelevant physical evidence; (7) the trial court improperly bolstered the testimony of his accomplices during the jury instructions; (8) the trial court constructively amended the charges against him; (9) the trial court improperly marshalled the evidence in favor of the State during the jury instructions; (10) his trial counsel barred him from testifying in his defense; (11) his appellate counsel failed to raise a cognizable issue on appeal; and (12) the State failed to disclose *Brady* materials." *Marra* v. *Acosta*, United States District Court, Docket No. 3:01CV0368 (AWT) (D. Conn. November 7, 2008). The federal district court denied that petition. Id.

On October 18, 2007, the petitioner filed a pro se petition for a writ of habeas corpus in the Superior Court in Rockville under docket number CV-07-4002041-S, and the habeas court, *Schuman, J.*, declined to issue the writ

pursuant to Practice Book § 23-24. Likewise, on May 14, 2015, the petitioner filed yet another petition for a writ of habeas corpus in Rockville under docket number CV-15-4007255-S, which alleged claims of ineffective assistance of habeas counsel in both the Noel and Palmieri cases. The habeas court, *Bright*, *J.*, dismissed that petition. That dismissal was recently affirmed on appeal by this court, and certification was denied by our Supreme Court. See *Marra* v. *Commissioner of Correction*, 170 Conn. App. 908, 154 A.3d 1123, cert. denied, 325 Conn. 906, 156 A.3d 536 (2017).

The petitioner additionally has two separate habeas actions that are currently pending before the trial court; however, the record in this case does not disclose the particular claims in those actions. See Rockville docket numbers CV-15-4007234-S, filed on May 27, 2015, and CV-15-4007353-S, filed on July 13, 2015.

[3] To the extent that Judge Pavia's order on the record may be ambiguous as to whether the withdrawal was made with or without prejudice, the written notice of the order, issued to all parties of record on October 26, 2012, makes clear that the matter was deemed to be withdrawn with prejudice. Moreover, neither party disputes that the withdrawal was deemed to be with prejudice.

[4] This case, in which the petitioner was represented by Attorney Kenneth Fox, eventually was consolidated with another of the petitioner's habeas actions in Rockville, docket number CV-13-4005039-S, in which the petitioner was represented by Attorney Adam Wallace. Accordingly, the petitioner was represented by two attorneys in this habeas action.

[5] At the hearing before the habeas court on May 4, 2015, the respondent stated that "the . . . factual allegations [in the fifth amended petition] are identical to the CV-05 case that [the petitioner] withdrew intentionally in 2012 and then refiled [in] this action." The petitioner later stated that "the allegations are the same in the sense that the allegations are about whether Attorney Riccio had originally done adequately discovery himself, but [there] are new items [that differ from the withdrawn petition that] we feel he could have discovered if he had done it adequately himself."

[6] "Practice Book § 23-30 (b) provides, in relevant part, that the respondent's return shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief. . . . [T]he doctrine of deliberate bypass historically has arisen in the context of habeas petitions involving claims procedurally defaulted at trial and on appeal." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 157 Conn. App. 701, 706, 117 A.3d 1003, cert. granted, 318 Conn. 903, 122 A.3d 632 (2015). Because the respondent pleaded procedural default and deliberate bypass as part of its special defenses, it satisfied the requirement of § 23-30 (b).

[7] More specifically, the respondent pleaded that count twelve is barred by the doctrine of res judicata.

[8] More specifically, the respondent pleaded that counts sixteen and seventeen are barred by the doctrine of laches.

[9] "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 161 Conn. App. 253, 265, 127 A.3d 1001, cert. denied, 320 Conn. 910, 128 A.3d 953 (2015).

[10] More specifically, this court concluded that "[h]abeas counsel had alerted the habeas court prior to the court's taking the bench that the petitioner wished to address the court. After addressing both the petitioner and habeas counsel, the court denied the petitioner's oral motion to appoint new counsel and indicated that the case would proceed that day. Immediately following this denial and prior to the court calling for the testimony of the first witness or the petitioner's taking the witness stand, however, habeas counsel, after conferring with the petitioner, indicated that his client wished to withdraw his petition. No evidence had been taken, and neither party had presented any arguments concerning the merits of the case before the court ruled that the petitioner could not withdraw his petition without prejudice." (Footnotes omitted.) *Kendall* v. *Commissioner of Correction*, supra, 162 Conn. App. 48.

[11] In *Palumbo*, we cited to *Kendall*, inter alia, as support for the following assertion: "The broad language used by this court to describe a plaintiff's right to withdraw an action must be read in conjunction with other cases that make clear that the right of withdrawal may be trumped in certain

circumstances by another party's right to restore the case to the docket." *Palumbo* v. *Barbadimos*, supra, 163 Conn. App. 112.

[12] We have previously held that an appeal of a withdrawal with prejudice is ripe for review because it "does not constitute a hypothetical injury contingent on a future event. The court's decision [constitutes] a final adjudication ending this matter and [concludes] the petitioner's rights with respect to [the] case." (Footnote omitted.) *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 756.

[13] At the previous CV-05 proceeding, Judge Pavia found that the trial date in that matter had been set many months in advance and that the issue of taking Attorney Riccio's deposition before the start of trial, due to his failing health, had been previously addressed by the parties and the court. Judge Pavia found that "[t]hat deposition was scheduled and rescheduled on several occasions. I know that the . . . respondent is indicating that they're not going to ponder as to why the deposition did not go forward, but I think it's worth noting for the record that it was not the respondent who was not available. It was also not the deponent who was not available, but for one reason or another, the matter was called off." As previously mentioned, Judge Pavia's factual findings were never challenged by the petitioner. Accordingly, Judge Sferrazza was free to rely upon them in determining whether to dismiss the present petition.

[14] In his memorandum of decision, Judge Sferrazza stated: "Before this court, the petitioner testified that his decision to withdraw the case and his responses to Judge Pavia was clouded by the effects of illness and/or medication. The court finds this testimony unworthy of belief."

[15] Our appellate courts historically "employed the deliberate bypass rule, as articulated in *Fay* v. *Noia* [372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)], in order to determine the reviewability of constitutional claims in habeas corpus proceedings that had not been properly raised at trial or pursued on direct appeal. . . . In *Fay* v. *Noia*, supra, [372 U.S. 438–39], the United States Supreme Court held that habeas corpus jurisdiction was not affected by the procedural default, specifically a failure to appeal, of a petitioner during state court proceedings resulting in his conviction. The court recognized, however, a limited discretion in the federal habeas judge to deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies. . . . This deliberate bypass standard for waiver required an intentional relinquishment or abandonment of a known right or privilege by the petitioner personally and depended on his considered choice. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief." (Citation omitted; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 130–31, 629 A.2d 413 (1993). "The deliberate bypass rule serves two important functions: (1) it encourages a litigant to have all constitutional claims resolved in a single proceeding economizing the time and resources of all concerned parties and bringing the case to a conclusion; and (2) it prevents a prisoner from deliberately deferring his claims of unlawful confinement until a time when a new trial, if required as a result of the collateral proceeding, would be, for all practical purposes, impossible." (Internal quotation marks omitted.) *State* v. *Rivera*, 196 Conn. 567, 571, 494 A.2d 570 (1985).

We acknowledge that our Supreme Court later concluded that the *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), cause and prejudice standard should be employed to determine the reviewability of habeas claims that were not properly pursued at trial or on direct appeal. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991). The majority in *Jackson* made clear, however, that "[i]n those rare instances in which a deliberate bypass is found, of course, habeas review would be barred for that reason alone, apart from the cause and prejudice standard." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, supra, 132.

[16] "[T]he ability to bring a habeas corpus petition at any time is limited by the traditional doctrine of abuse of the writ based upon unnecessary successive petitions." *Summerville* v. *Warden*, 229 Conn. 397, 428 n.15, 641 A.2d 1356 (1994).

[17] As previously discussed in part I of this opinion, we need not decide whether Judge Sferrazza's basis for dismissing the petition more properly implicates the doctrine of deliberate bypass, waiver, or abuse of the writ, as application of any of those doctrines results in the same outcome here.