******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# CONNECTICUT COMMUNITY BANK, N.A. *v.*
## JAMES T. KIERNAN, JR., ET AL.
### (AC 41378)

Lavine, Sheldon and Elgo, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant K. At the time that the plaintiff commenced its foreclosure action, K's property was encumbered by a first mortgage that subsequently was refinanced with another bank, M Co. After a dispute arose between the plaintiff and M Co. as to the priority of their mortgages, the parties agreed to sell the property and to escrow the sale proceeds pending a resolution of the dispute. The plaintiff then converted the foreclosure action to a claim for interpleader as against M Co. and a claim against K for damages pursuant to the language of the mortgage note. After K was defaulted for failure to plead, the trial court granted the plaintiff's motion for summary judgment as against K. The plaintiff thereafter sought an award of $134,462.82 in attorney's fees as against K, which included attorney's fees it incurred in protecting the priority of its mortgage by prosecuting the interpleader claim. The trial court awarded the plaintiff $11,000 in attorney's fees, and the plaintiff appealed to this court. The plaintiff claimed that the trial court improperly excluded from its award any attorney's fees that it had incurred in protecting the priority of its mortgage as against M Co. *Held* that the trial court properly excluded from its award of attorney's fees against K any fees that the plaintiff incurred in asserting its priority claim as against M Co.; the plaintiff provided no legal or factual basis for extending certain language in its mortgage note, which permitted the recovery of attorney's fees incurred to enforce the plaintiff's rights in foreclosing its mortgage, to a separate claim asserting priority over M Co.'s lien, the mortgage note did not mention attorney's fees incurred in protecting a priority claim, and the plaintiff did not have a priority claim against any other person or entity at the time that it issued its mortgage, as K's property was encumbered by a first mortgage when the plaintiff issued its loan and the plaintiff's lien would have remained subordinate to the first mortgage if that first mortgage had not been refinanced in favor of M Co., and the plaintiff's claim that the trial court improperly applied *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC* (308 Conn. 312) when it required the plaintiff to distinguish the fees it had incurred as against K from those it had incurred as against M Co., was not reviewable, as the plaintiff, at trial, did not in any meaningful way dispute the applicability of *Total Recycling Services of Connecticut, Inc.*, to its claims for fees against K.

Argued November 29, 2018—officially released February 19, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., brought to the Superior Court in the judicial district of Stamford-Norwalk, where the plaintiff filed an amended complaint and withdrew the action as against the defendant Elizabeth M. Kiernan et al.; thereafter, the named defendant was defaulted for failure to plead; subsequently, the court, *Povodator, J.*, granted the plaintiff's motion for summary judgment and granted in part the plaintiff's motion for attorney's fees, and the plaintiff appealed to this court. *Affirmed.*

*Houston Putnam Lowry*, with whom, on the brief, was *Dale M. Clayton*, for the appellant (plaintiff).

*Opinion*

SHELDON, J. The plaintiff, Connecticut Community Bank, N.A., doing business as the Greenwich Bank & Trust Company, appeals from the judgment of the trial court awarding what it claims to be an allegedly insufficient amount of attorney's fees after finding the defendant James T. Kiernan, Jr.,[1] liable pursuant to a mortgage note that he executed in favor of the plaintiff. The plaintiff claims on appeal that the trial court erred by excluding from its award any attorney's fees that it had incurred in protecting the priority of its mortgage as to a subsequent encumbrancer, M&T Bank, formerly known as Hudson City Savings Bank (M&T Bank), which it had brought into this action as a defendant on its claim of interpleader. We affirm the judgment of the trial court.

The following procedural history and undisputed facts are relevant to this appeal. On October 7, 2005, the defendant and his wife, Elizabeth M. Kiernan, executed a home equity line of credit agreement and disclosure statement (HELOC) in favor of the plaintiff in the original maximum principal amount of one million dollars. The HELOC was secured by an open-end mortgage deed encumbering certain real property located at 25 The Ridgeway in Greenwich. At the time the plaintiff issued the HELOC, the subject property, which had been owned by Elizabeth Kiernan since 1992, was encumbered by a mortgage in favor of Washington Mutual Bank, F.A. (Washington Mutual), in the principal amount of $2,500,000. The plaintiff's mortgage was recorded on the Greenwich land records on February 5, 2008.

In April, 2011, the Kiernans refinanced the mortgage on the subject property with M&T Bank. As a result, Washington Mutual's mortgage was released and a new mortgage was recorded on the land records in favor of M&T Bank on the principal amount of $2,425,000 on May 3, 2011.

At some point in 2015, the Kiernans defaulted on the HELOC and, consequently, the plaintiff brought this action to foreclose its mortgage on the subject property. During the course of litigation, a dispute arose between the plaintiff and M&T Bank as to the priorities of their respective mortgages. By agreement of all parties, the property was sold and all proceeds from the sale were deposited in an escrow account pending resolution of the priority dispute between the plaintiff and M&T Bank.

On April 6, 2017, the plaintiff amended its complaint, converting its claim against the defendant from a mortgage foreclosure claim to a claim for interpleader and a claim on a note. The amended complaint thus contained two counts; the first stating a claim for interpleader as against M&T Bank and the second presenting a claim

for damages on the note as against the defendant. The defendant did not respond to the amended complaint, and thus he was defaulted for failure to plead.

On April 12, 2017, the plaintiff filed a motion for summary judgment as to the defendant on the second count of the amended complaint. The defendant did not oppose the plaintiff's motion. On August 11, 2017, the court granted summary judgment on the note in favor of the plaintiff "in the principal amount of $999,140.89 plus interest in the amount of $68,515.40 ($54,515.40 as calculated through 4/7/17), plus 126 days (through 8/11/17) at $109.49, which comes to $13,795.74 (plus interest continuing to accrue at $109.49 per day)." The court also addressed the plaintiff's claim for attorney's fees as follows: "The plaintiff has indicated an intent to submit a claim for attorney's fees, as allowed under the note. The court will entertain such a submission, subject to the presumptive obligation of a party claiming the right to attorney's fees to make an attempt to identify fees directly or closely related to the claim for which such fees are allowed, eliminating fees for matters unrelated to the claim, to the extent possible/ practical. *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 63 A.3d 896 (2013) (*Total Recycling*). Thus, subject to the plaintiff's possible argument to the contrary, the plaintiff's fees incurred in connection with its dispute as to priority to the proceeds of the sale of the property, which, in turn, is a consequence of the attempted mortgage foreclosure, at least facially would seem unrelated to the 'pure' note based claim against this defendant. . . . Attorney's fees are to be determined after a claim with supporting documentation is submitted (allowing parties an opportunity to object or otherwise challenge the claim, thereafter)."

On May 5, 2017, the plaintiff filed an affidavit in support of its claim for attorney's fees against the defendant in the amount of $46,152 to recover for time spent by counsel on its claim against the defendant through May, 2017. On August 24, 2017, the plaintiff filed an updated motion for attorney's fees against the defendant in the amount of $134,462.82, seeking $102,084 in fees for its current counsel, $26,672.60 in fees for its prior counsel, and $5706.22 in costs. The plaintiff argued that it was entitled to the full amount of $134,462.82 pursuant to § 18 (c) (ii) of the note signed by the defendant, which provided: "We can enforce our rights in court. This includes, for example, foreclosing on the mortgage described in section 11 above. If we enforce our rights in court, you agree to pay our court costs and attorneys' fees, as allowed by law and as set by the court." Pursuant to the court's previous order to attempt to apportion the fees incurred against the defendant and those incurred in pursuit of its priority claim, the plaintiff alleged that it had incurred attorney's fees in the amount of $41,484.50 as to the defendant directly. The plaintiff

argued, however, that the defendant "is responsible for all attorney's fees pursuant to his contract (the note) with [the] plaintiff, including [the] plaintiff's attorney's fees regarding the priority dispute with [M&T Bank] (because such fees were incurred in connection with his loan). If [the] plaintiff had not made this loan, there would be no priority dispute with [M&T Bank]."[2]

The court heard argument on the plaintiff's motion for attorney's fees on October 10, 2017. At the hearing, counsel for the plaintiff reiterated his contention that his client was entitled to attorney's fees from the defendant not only for all fees it had incurred in obtaining the summary judgment against him on the note, but also for all fees it had incurred in protecting the priority of its mortgage by prosecuting its interpleader claim. The defendant objected to the plaintiff's argument that he was responsible for all fees incurred by the plaintiff in prosecuting its interpleader claim. He further argued that the amount of fees requested was excessive because he did not oppose the plaintiff's claim against him on the note and the claimed 108.5 hours expended in obtaining judgment against him on the note was unreasonable. He requested instead that the court award the plaintiff fees for four hours of work in the total amount of $1600. During rebuttal argument by the plaintiff, the court commented as follows: "[A] hundred hours strike me as somewhat extreme for a motion for summary judgment against a defaulting party." Apparently agreeing, counsel for the plaintiff replied, "It does, Your Honor." Counsel for the plaintiff then agreed with the court that one hundred hours did not seem to be a "defensible" claim, and conceded "that some of these entries, especially early on, relate to the M&T issues. I'm surprise[d] that they weren't stricken from here." The court offered the plaintiff an opportunity to file a revised affidavit, but the plaintiff declined the court's offer, noting: "I'm sure you're more than capable of reviewing what has been submitted and coming up with what you believe is a fair amount of time for the work— summary judgment—and . . . ." The court thereupon took the papers on the plaintiff's motion.

On January 30, 2018, the court issued an order granting the plaintiff attorney's fees in the total amount of $11,000.[3] The court explained that, pursuant to *Total Recycling*, which it had previously referenced when granting the plaintiff's motion for summary judgment as against the defendant, it was limiting the plaintiff's award of attorney's fees to those incurred in prosecuting its claim against the defendant on the note, not those incurred in protecting the priority of its mortgage against M&T Bank on its interpleader claim. The court noted that the plaintiff had not objected to the application of *Total Recycling* to this case, and, in fact, that the plaintiff had withdrawn its claim for the full $102,084 when it argued its motion to the court. The court further noted that it had considered all of the plaintiff's claims

for fees against the defendant, and noted that the defendant had not opposed any of the plaintiff's claims against him in its pursuit of judgment against him, and thus that summary judgment had been rendered against him on that claim upon his default. The court ultimately concluded that upon weighing the "straightforward nature of the claim as advanced" against the defendant and the "magnitude of the debt" claimed by the plaintiff, the defendant's "contractual responsibility for reasonable attorney's fees related to collection efforts by current counsel is $10,000." Therefore, upon determining that the plaintiff should also receive an additional $1000 in attorney's fees for the limited efforts of prior counsel, it awarded the plaintiff $11,000 in attorney's fees against the defendant under the note. This appeal followed.

The plaintiff claims that the trial court erred in excluding from its award of attorney's fees against the defendant the fees that it had incurred in protecting the priority of its mortgage. In support of that claim, the plaintiff argues that § 18 (c) (ii) of the note "is a very broad contractual attorney's fees provision. [The defendant] agreed to reimburse [the] plaintiff for its court costs and attorney's fees to enforce [the] plaintiff's rights. This not only includes [the] plaintiff's rights under the HELOC, but it also explicitly includes foreclosing the HELOC mortgage. This means the reimbursed attorney's fees will include not only the cost to enforce the mortgage, but also [the] plaintiff's costs incurred to protect the HELOC mortgage's priority." The plaintiff has provided no legal or factual basis for extending the explicit language relating to foreclosing its mortgage to a separate claim against another party asserting priority over that other party's lien, nor are we aware of any. The HELOC does not mention fees incurred in "protecting" a priority claim; nor does any other provision of the HELOC entitle the plaintiff to such fees. In fact, the plaintiff did not have a priority claim against any other person or entity at the time that it issued the HELOC because the subject property was then encumbered by the first mortgage from Washington Mutual, so it is difficult to understand how the plaintiff reads into that contractual language the defendant's obligation to pay attorney's fees to protect a right that the plaintiff did not have when the parties signed the note. The plaintiff argued in its motion for attorney's fees, consistent with its position before this court, that, "If [the] plaintiff had not made this loan, there would be no priority dispute with [M&T Bank]." This argument overlooks the fact that the property by which its mortgage was secured had been encumbered by a first mortgage when it extended its loan to the defendant. In so arguing, the plaintiff ignores the fact that if the defendant had not refinanced the first mortgage to Washington Mutual in favor of M&T Bank, there also would be no priority dispute, for the plaintiff's lien would have remained subordinate to that of Washington Mutual.[4]

The plaintiff also contends that the trial court "erred in applying or misapplying *Total Recycling* . . . to this case. [The] plaintiff made its objection known to the court." We disagree. In its decision granting the plaintiff's motion for summary judgment, the court announced its intention to rely on *Total Recycling*, in which our Supreme Court held that "a party is . . . entitled to a full recovery of reasonable attorney's fees if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined." *Total Recycling*, supra, 308 Conn. 333. Pursuant to *Total Recycling*, the court instructed the plaintiff to attempt to distinguish the fees it had incurred against the defendant in enforcing its claim on the note from those incurred against M&T Bank in protecting the priority of its lien. Accordingly, when the plaintiff filed its motion for attorney's fees on August 24, 2017, it did not, in any meaningful way, dispute the applicability of *Total Recycling* to its claims for fees against the defendant; nor did it do so at oral argument on its motion for attorney's fees. We thus decline to review the plaintiff's claim that the court improperly applied *Total Recycling* to this case in ordering it to apportion its fees between those that it had incurred as to the defendant and those that it had incurred against M&T Bank in its priority claim.[5]

On the basis of the foregoing, we cannot conclude that the court erred by excluding from its award of attorney's fees against the defendant any attorney's fees that the plaintiff incurred in asserting its priority claim against M&T Bank.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although James T. Kiernan, Jr., is not the only defendant in this action, we refer to him as the defendant because the order at issue in this appeal was rendered against him.

[2] Notably, also on May 5, 2017, the plaintiff filed a motion for attorney's fees against M&T Bank for fees incurred to obtain the judgment of interpleader. Many of the claimed billable hours listed in the affidavit submitted by the plaintiff in support of its motion were identical to those contained in the affidavit that it submitted in support of its claim for fees against the defendant.

[3] Specifically, the court ruled, inter alia: "Having obtained summary judgment as against this defendant, the plaintiff claims that it is entitled to $100,000 as reasonable attorney's fees. The defendant has objected to that claim, and the court heard argument on October 10, 2017. (As a point of reference, in [its ruling on the plaintiff's motion for summary judgment], the court had noted its obligation to apply [*Total Recycling*], supra, 308 Conn. 312, to the claim for attorney's fees, requiring the claimant to make an effort to allocate attorney's fees to claims for which such fees are collectable to the extent reasonably possible. The plaintiff has not challenged [the] applicability of that decision to this situation.) During the course of argument, the defendant accurately pointed out that he had never filed any pleadings, filed no objection to the motion for summary judgment, and while the motion for summary judgment was pending, when the plaintiff filed a motion for default for failure to plead, nothing was done that might prevent that motion from being granted. Somewhat simplistically, the defendant's position is that in connection with these proceedings, he has never actively disputed any claim made by the plaintiff, yet is being asked to pay more than $100,000 as 'reasonable' attorney's fees in connection with his liability

under the note. The defendant also argued that an appropriate award would be in the area of $1600. Somewhat conceding that $100,000 might be unreasonable, during argument, the plaintiff suggested something substantially greater would be reasonable, doing a rough calculation suggesting in excess of twenty hours just for the motion for summary judgment. . . . Again, although arguably withdrawn by virtue of the oral argument discussed above, the plaintiff has claimed $102,084 in legal fees attributable to current counsel. The court has attempted to identify each/every billing entry making mention of summary judgment or some activity seemingly related to same (e.g., references to an affidavit of debt), and even if the court were to assume that the full amount of time for each such entry was solely related to the motion for summary judgment, the total would be less than $9500. (Entries for April 5 [two entries], 11, 12 [two entries], 25, May 5, 10, 12, and 25, with the motion for summary judgment being submitted for adjudication on May 30, 2017.) Most if not all of the entries for those dates contain activities unrelated to summary judgment, and an especially extreme example is the entry for May 12, totaling $1080, where the only apparent connection to summary judgment was reclaiming the motion. (For clarity, the court is not suggesting that the plaintiff is claiming that the full 2.7 hours on May 12 were attributable to summary judgment, but rather is using this as an example of the extent to which the maximal calculation set forth earlier in the paragraph clearly exceeds any realistic allocation of time to the motion.) Additional time undoubtedly was spent with respect to the preparation of the request for admissions and the subsequent notice relating to the failure of the defendant to respond (deny) those requests. Additional time undoubtedly was spent with respect to the deposition, as reflected on submitted documentation. Again, however, to the extent that the primary strategy appears to have been summary judgment, the need for alternate avenues (e.g., the court recalls seeing somewhere, in a pleading, a reference to the admissions potentially being used in support of summary judgment—something that does not appear to have happened) becomes less pressing, such that the reasonableness of substantial fees for such alternate avenues is open to question. (Alternatively, they may be subject to 'discount' for that reason.) Even allowing for some amount of time attributable to 'getting up to speed' when the file was taken over, the claim against this defendant remained an uncontested claim for money owed on a note/loan (amounts advanced on a line of credit). Conversely, the court must recognize that substantial time and effort went into the initial foreclosure aspect of the proceeding—directed to a different defendant—which was transformed into an interpleader proceeding in turn necessitated by the issue currently being litigated quite actively relating to priority of liens. The court must draw a distinction between covering all bases as a matter of due diligence, and reasonableness in pursuing a claim in which there had been no identified or apparent indicia of resistance. Thus, while it may have been appropriate diligence to prepare and file a motion for summary judgment, while at the same time filing/ serving requests for admissions directed to him, while at the same time preparing for and eventually taking his deposition, the question for the court is what is reasonable with respect to allowance of attorney's fees, given a contractual entitlement to such an award and the absence of any 'resistance' from this defendant. Under the circumstances, taking into account the need for litigation, the need to address claims against this defendant in the context of a claim against the mortgagor, initial uncertainty as to whether there would be active resistance/opposition to the motion for summary judgment or any other approach that might be taken, the relatively straightforward nature of the claim as advanced and presented via summary judgment, and given the magnitude of the debt (recognizing that the substantial amount in dispute would justify greater attention to detail), the court concludes that an appropriate award of reasonable attorney's fees, as against defendant James Kiernan under his contractual responsibility for reasonable attorney's fees related to collection efforts by current counsel, is $10,000. Added to the $1000 that the court has estimated to be reasonable fees for efforts of prior counsel, the aggregate reasonable attorney's fees attributable to collection efforts directed to defendant James Kiernan total $11,000."

[4] We note that the priority dispute is still pending, and it is not clear from the record whether the priority claim that it seeks to have this defendant fund is valid, a subject upon which we express no opinion. Although it is not disputed that the plaintiff's HELOC mortgage was recorded prior to M& T Bank's mortgage, "[t]here is . . . an exception to the "first in time, first in right rule." The Restatement (Third), Property, Mortgages § 7.6 (1997), on the topic of subrogation, provides a thorough explanation of this complicated

doctrine. The Restatement provides in relevant part: "(a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee. . . ." Restatement (Third), supra, § 7.6.

"The holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged." Id., comment (a), p. 510.

Moreover, the plaintiff's claim of priority does not arise from any interference by the defendant with the plaintiff's enforcement of its rights under the note. As noted, the plaintiff chose to assert its priority over M&T Bank, a right that it did not have when it issued the HELOC to the defendant. That priority dispute is ongoing between the plaintiff and M&T Bank, and, should the plaintiff prevail in its priority claim, it may seek attorney's fees under General Statutes § 52-484, which it has properly requested in its interpleader complaint, and under which it has sought and received an award of attorney's fees for commencing the interpleader proceeding against the defendant.

[5] We note that any claim that it was impractical to so apportion those fees is belied by the fact that the plaintiff did, in fact, present to the trial court an affidavit apportioning them.