******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DEVON EARLINGTON SMITH *v.* COMMISSIONER OF CORRECTION
## (AC 46420)

Bright, C. J., and Cradle and Seeley, Js.

*Syllabus*

The petitioner, who previously had been convicted of murder, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel had provided ineffective assistance and that the state had violated *Brady* v. *Maryland* (373 U.S. 83). The petitioner had filed a petition for a writ of habeas corpus alleging those same claims in 2011, after having withdrawn seven previous actions seeking a writ of habeas corpus. At the petitioner's request, his trial date for the 2011 petition was postponed multiple times. In 2017, on the day that trial was scheduled to commence, the petitioner's counsel, L, informed the habeas court that the petitioner wanted to withdraw his petition. The habeas court canvassed the petitioner regarding this desire and informed the petitioner that, if he withdrew his petition, it would be with prejudice, meaning that he would be unable to raise the same claims in a subsequent petition. L argued that, although exhibits had been marked and witnesses had been subpoenaed and were present, the petitioner should be able to withdraw his petition without prejudice because the evidence had not yet been presented, the petitioner had not previously litigated a habeas petition, and there were potential witnesses whom the petitioner and L had been unable to locate. Although the habeas court stated that, if the trial proceeded that day, it would provide the petitioner with a second trial date to allow him to locate the missing witnesses, following a second canvass, the petitioner reiterated his desire to withdraw the petition. Thereafter, L and the petitioner signed a withdrawal form that included a notation stating that the withdrawal was accepted by the habeas court with prejudice. That same day, the petitioner filed a motion to reconsider the habeas court's ruling that the withdrawal was with prejudice, which the habeas court denied. On the granting of certification, the petitioner appealed to this court, which affirmed the habeas court's judgment. In 2019, the petitioner filed the present habeas petition, and the habeas court raised a motion to dismiss sua sponte. Following a hearing on that motion, the court denied the petition, finding that the petitioner was barred from litigating his claims due to the withdrawal with prejudice of the 2011 petition. Thereafter, the habeas court denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal, the petitioner having failed to present an issue that was debatable among jurists of reason,

that a court could resolve in a different manner, or that deserved encouragement to proceed further: the court did not err in finding that the petitioner knowingly, voluntarily, and intelligently had withdrawn the 2011 petition with prejudice and, thus, was barred from litigating the claims raised in the 2019 petition because, to the extent that statements made to the habeas court by L or counsel for the respondent, the Commissioner of Correction, during the 2017 proceeding created any ambiguity as to the consequences of the withdrawal of the 2011 petition, those ambiguities were resolved by the habeas court's thorough canvass of the petitioner, the record having supported the conclusion that the court adequately and accurately informed the petitioner that he would be barred from raising the same claims raised in the 2011 petition in a subsequent petition; moreover, contrary to the petitioner's assertions, the habeas court in the present action reasonably could have inferred that the petitioner fully understood the consequences of withdrawing the 2011 petition, namely, that he would be barred from pursuing his habeas claims unless he succeeded on appeal in distinguishing his case from *Marra* v. *Commissioner of Correction* (174 Conn. App. 440) or, alternatively, that he would have to take his chances that the respondent would not raise a collateral estoppel or res judicata defense if the petitioner were to file a subsequent petition raising the same claims as those raised in the 2011 petition; furthermore, the petitioner's statements during the canvass that he understood that he could withdraw his petition at any time prior to a hearing without prejudice merely demonstrated that he believed that the habeas court should allow him to withdraw without prejudice, not that he did not understand the consequences should the court instead grant the withdrawal with prejudice; additionally, the petitioner's argument that he believed he was not bound by *Marra* due to the statements the habeas court made at a hearing that was held more than one week prior to the canvass, noting that the situation was dissimilar to that in *Marra*, was without merit, as the petitioner could not have reasonably believed that such statements applied to conduct that had not yet occurred, including the withdrawal with prejudice of the 2011 petition and the petitioner's subsequent filing of the 2019 petition raising the same claims.

Argued April 9—officially released June 4, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (petitioner).

*Raynald A. Carre, Jr.*, deputy assistant state's attorney, with whom, on the brief, were *Jo Anne Sulik*, senior assistant state's attorney, and *Zenobia G. Graham-Days*, assistant attorney general, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. The petitioner, Devon Earlington Smith, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) erroneously concluded that he knowingly, voluntarily, and intelligently withdrew a prior habeas petition with prejudice, thereby waiving his right to bring the same claims in the present petition. We disagree and, accordingly, dismiss the appeal.

The following undisputed facts and procedural history are relevant to the present appeal. In 1993, a jury found the petitioner guilty of murder in violation of General Statutes § 53a-54a, and he was sentenced to sixty years of incarceration. *Smith* v. *Commissioner of Correction*, 187 Conn. App. 857, 858, 204 A.3d 55, cert. denied, 331 Conn. 912, 203 A.3d 1247 (2019). On direct appeal, this court affirmed the petitioner's conviction, and our Supreme Court subsequently denied his petition for certification to appeal. See *State* v. *Smith*, 46 Conn. App. 285, 286, 699 A.2d 250, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997).

In January, 2011, the petitioner filed a petition for a writ of habeas corpus[1] (2011 petition) alleging, inter alia,

---

[1] The petitioner was self-represented at the time the petition was filed but was appointed counsel on November 21, 2011. *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 859.

that his criminal trial counsel had provided ineffective assistance and that the state had violated *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 369–70, 71 A.3d 512 (2013).[2] The petitioner initially represented in the 2011 petition that he had not previously filed a habeas petition but later acknowledged that he had filed seven prior habeas actions challenging his 1993 conviction, all of which he had withdrawn before trial. *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 859–60. Ultimately, the petitioner withdrew the 2011 petition with prejudice. He then appealed from the judgment that resulted from that withdrawal, claiming that the habeas court, *Prats, J.*, abused its discretion by requiring that the withdrawal be with prejudice. Id., 862–63. In rejecting the petitioner's claim, this court set forth the following procedural history regarding the 2011 petition. "On April 3, 2013, the habeas court [*Newson, J.*] issued a scheduling order, in which it set the first day of trial for October 7, 2013. On September 13, 2013, less than a month before trial was scheduled to begin, the petitioner filed a motion requesting a continuance. The habeas court . . . granted this motion on September 19, 2013. . . . In October, 2013, [after the petitioner's former counsel withdrew from representation] Wade Luckett entered an appearance as the petitioner's counsel.

"On June 6, 2014, the habeas court issued a new scheduling order, which postponed the start of trial until June 18, 2015. On January 2, 2015, the petitioner, through counsel, filed an amended habeas petition. On June 4, 2015, two weeks before trial, the petitioner again filed a motion to continue the trial date. In support

---

[2] "The petitioner also alleged a claim of actual innocence that was dismissed by the habeas court." *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 859 n.1.

of this motion, the petitioner identified four potential witnesses that he had yet to interview. The habeas court, *Oliver, J.*, granted the petitioner's motion on June 9, 2015, and subsequently rescheduled the trial for May 26, 2016.

"On May 3, 2016, approximately three weeks before the trial was scheduled to begin, the petitioner filed a motion to amend his habeas petition because he had become aware that another witness, 'Jesus Rodriguez, would have provided favorable, if not outright exculpatory, testimony on [the petitioner's] behalf . . . and was available to testify if he [were] called as a witness.' The habeas court granted the petitioner's motion to amend and marked off the trial that had been scheduled to begin on May 26, 2016. The start of trial was then postponed to March 20, 2017. The petitioner filed a third amended habeas petition on March 8, 2017.

"On March 15, 2017, five days before trial was scheduled to begin, the petitioner again asked that trial be continued, this time to accommodate two of his witnesses. The habeas court granted this request and rescheduled trial for July 17, 2017. . . .

"Prior to the commencement of trial on July 17, 2017, Luckett informed the habeas court, *Prats, J.*, that he was not ready to proceed because the petitioner wanted to withdraw his petition. [Judge Prats] canvassed the petitioner regarding his desire to withdraw and informed him that if he withdrew his petition, it would be with prejudice, meaning he would be unable to raise the same claims in a subsequent habeas petition." Id., 860–61.

During the canvass, the petitioner stated that, on and prior to that morning, he had spoken to Luckett about withdrawing the petition. The petitioner also indicated that he was making the decision to withdraw "freely and voluntarily," was not being threatened or forced,

and had not taken any medications. Judge Prats then asked the petitioner: "[Y]our attorney said the possibility, but if the court grants the withdrawal of this action, you understand that you will be barred in the future from raising these claims again in another habeas . . . ?" The petitioner replied: "My understanding is I could withdraw the habeas at any time prior to a hearing." Judge Prats explained: "[I]f you try to [file] a new habeas in the future, there will be objection from the respondent [the Commissioner of Correction] in this case, and rightfully so . . . we're on the eve of trial today. We have witnesses who have been subpoenaed for today. This case goes back six years . . . . [Present] [c]ounsel has been involved . . . since 2013. It's been scheduled for trial. [There have] been continuances.

"All of that has been done between now and then with a full opportunity to be heard. So just withdrawing it with the hope that later on you're going to file another [petition] with the same claims would not be appropriate. Do you understand? And it's going to [be met] with objection, and if the court accepts your withdrawal today, it would be with prejudice, meaning that it would bar you from raising these claims today." The petitioner stated: "I understand everything you said, Your Honor, but we just had a hearing about this . . . two weeks ago,[3] and the court established the case law regarding

[3] The petitioner was referring to the July 6, 2017 hearing before the court, *Sferrazza, J.*, on the respondent's motion to dismiss the 2011 petition. The respondent argued that the petition should be dismissed because it was "successive and constitute[d] an abuse of the writ and deliberate bypass." During the hearing, Judge Sferrazza granted the respondent's motion as to the petitioner's actual innocence claim but denied the motion as to the petitioner's claim of ineffective assistance of counsel. As to the ineffective assistance claim, Judge Sferrazza stated: "This is not a situation where I can find that the petitioner is trying to avoid an order, which, in the *Marra* case, they found that he was trying to avoid—I think they call it—game the system with procedural . . . chicanery. . . . None of that occurred here so . . . I'm not going to grant the motion to dismiss as to the ineffective assistance count." See *Marra* v. *Commissioner of Correction*, 174 Conn. App. 440, 457, 166 A.3d 678 ("although the party initiating an action generally

this type of situation, and prior [to] a hearing, I can withdraw the habeas without prejudice. That's my understanding." (Footnote added.)

Luckett acknowledged that exhibits had been marked and that witnesses had been subpoenaed and were present. He argued that the court should nonetheless allow the petitioner to withdraw his petition without prejudice because evidence had not yet been presented; unlike in *Marra* v. *Commissioner of Correction*, 174 Conn. App. 440, 444, 446, 166 A.3d 678, cert. denied, 327 Conn. 955, 171 A.3d 456 (2017), the petitioner had not previously litigated a habeas petition; and there were potential witnesses whom the petitioner had been unable to locate despite Luckett's efforts. Judge Prats informed Luckett that, if the petitioner started trial that day, she would grant him another day of trial in the future, which would allow the petitioner to locate the missing witnesses. Judge Prats reiterated to Luckett, however, that "if [the petitioner] withdraws, it's going to be done with prejudice, and then you would have to argue with the [respondent] in the future to try and see if you can get around it if [the petitioner] tries to raise again an ineffective assistance claim in the future." Luckett stated that he was ready to begin trial but that he would let the petitioner decide whether to withdraw the case.

The court then canvassed the petitioner again, stating: "We're ready to start today. We can do that, and I would give you a second date. As you heard, [Luckett] has made diligent efforts to try and reach these possible witnesses, but to no avail, but the court would be willing

_____

enjoys a right to withdraw litigation unilaterally prior to a hearing on the merits, a later filing of an identical case by that party can be deemed an abuse of that right if it constitutes procedural chicanery, that is, it offends the orderly and due administration of justice and is intended to avoid the consequences of [his or] her [previous] waiver" (internal quotation marks omitted)), cert. denied, 327 Conn. 955, 171 A.3d 456 (2017).

to give you a second date . . . and so, if I grant the withdrawal, just for the record, I want you to be very clear that the court is going to do it with prejudice, and that later on, if you try to raise the same basis, there's going to be [a] strong objection, and you're possibly going to be very barred from raising this claim again. You understand that?" The petitioner responded: "I understand what you're saying, Your Honor. . . . I just want a fair shot at my freedom." The court restated that the petitioner's "fair shot is starting today, and if you need a second date, the court will give you a second date. If not, I'll accept your motion to withdraw, but it's going to be done with prejudice and with the possible ramifications and consequences as the court has outlined. So, you tell me." The petitioner replied: "I'll take my chances. Rather [not] have a hearing today and lose with certainty. Doesn't make sense to me."

The petitioner and Luckett subsequently signed a withdrawal form featuring the notation: "Withdrawal w[ith] prejudice accepted by the court (Prats, J.) after canvass on the record." That same day, the petitioner filed a motion to reconsider the court's ruling that the withdrawal was with prejudice, which the court denied on July 28, 2017. The petitioner then filed a petition for certification to appeal the court's decision, which the court granted. On appeal to this court, the petitioner argued that the circumstances of his case were distinguishable from those in which a court may order that a petition be withdrawn with prejudice. This court affirmed the judgment, concluding that, "under [the] circumstances, the court acted within its discretion in granting the petitioner's motion to withdraw with prejudice." *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 868.

This court observed that the petitioner's case was factually similar to *Marra* v. *Commissioner of Correction*, supra, 174 Conn. App. 440, and *Mozell* v. *Commissioner of Correction*, 147 Conn. App. 748, 83 A.3d 1174,

cert. denied, 311 Conn. 928, 86 A.3d 1057 (2014). *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 866–68. In those cases, this court concluded that the habeas court had acted within its discretion in accepting a withdrawal with prejudice. *Marra* v. *Commissioner of Correction*, supra, 459–61; *Mozell* v. *Commissioner of Correction*, supra, 759–60. In particular, this court stated: "Like the petitioners in *Marra* and *Mozell*, the petitioner in the present case had filed and withdrawn numerous prior habeas petitions. Indeed, the petitioner in the present case had filed more petitions than the petitioners in *Marra* and *Mozell*, who filed two and three petitions, respectively. The petitioner in the present case filed at least seven petitions, all of which he withdrew before trial.

"The petitioner attempts to distinguish the present case from *Marra* and *Mozell* by arguing that in those cases a final judgment had been rendered on other petitions filed by the petitioners, whereas, in the present case, none of the petitioner's prior habeas petitions had reached final judgment or even received a hearing on the merits. In the present case, final judgment was not reached on any of the petitioner's many habeas petitions because the petitioner chose to withdraw them. Despite his choice to withdraw the petitions, the petitioner was provided every opportunity to continue to litigate them and, therefore, had a full opportunity to be heard. In this case, trial was continued on five occasions, more times than in *Marra* and *Mozell* combined. . . . Four of the continuances in the present case were granted at the petitioner's request. Moreover, the habeas court was willing to continue the case in response to the petitioner's request to withdraw his petition. The court offered the petitioner a second day of trial in the future so that he could attempt to find Rodriguez. The petitioner was afforded ample time to prepare his case.

"As did the petitioners in *Marra* and *Mozell*, the petitioner sought to withdraw his petition on the eve of trial when the case was ready to proceed after efforts and resources had been expended in preparation for trial. Similarly, exhibits in the present case had been marked, counsel were ready to proceed, and witnesses had been subpoenaed and were ready to testify. Moreover, as in *Mozell* where expenses had been incurred in setting up videoconferencing for a witness in Nevada, in the present case, witnesses were subpoenaed and were present to testify.

"Additionally, like the petitioner in *Marra*, the petitioner in the present case made the ultimate decision to withdraw the habeas matter on the day of trial and was fully aware of the potential consequences of withdrawal, as he had been extensively canvassed by the habeas court." (Footnote omitted.) *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 867–68.

On May 9, 2019, the petitioner filed the present habeas petition, which he subsequently amended on December 27, 2021, alleging the same constitutional claims raised in the 2011 petition. The respondent filed an amended return on October 27, 2022, denying the petitioner's constitutional claims and arguing, inter alia, that "[t]he prior withdrawal with prejudice bar[red] the petitioner from raising [those] claims . . . and [that] any attempt to relitigate the 'with prejudice' determination [was] barred by the principles of res judicata and/or collateral estoppel." In his reply, the petitioner argued that the withdrawal with prejudice was not knowing, voluntary, and intelligent, and his claims thus were not barred by that withdrawal, because he "did not fully understand the consequences of withdrawing" and his "mental health rendered him unable to make a knowing, voluntary, and intelligent waiver of his rights . . . ."[4]

[4] In addition, the petitioner alleged that the withdrawal with prejudice resulted from the ineffective assistance of habeas counsel. The court, *Newson, J.*, rejected this claim because "there [was] simply no credible evidence

On November 1, 2022, the court, *Newson, J.*, issued a sua sponte notice of a motion to dismiss hearing as to whether the petitioner's claims should be dismissed pursuant to Practice Book § 23-29 (1), (2), and (3)[5] because this court affirmed the prior habeas court's withdrawal with prejudice of the same claims raised in the present petition. The parties each filed a memorandum of law in response to the court's order, reiterating their arguments regarding that issue as set forth in their initial pleadings. Additionally, the petitioner argued that this court's decision in his prior habeas appeal does not preclude further litigation on the issue of the withdrawal with prejudice because Judge Newson had evidence before him that was not reasonably available at the time of the prior proceeding. Specifically, the petitioner asserted that, because Judge Newson had sworn testimony from both the petitioner and Luckett about the circumstances surrounding the withdrawal that was not previously available to the prior habeas court and this court in the petitioner's prior habeas appeal, Judge Newson was "in a different position . . . to assess the validity of the petitioner's waiver . . . ."

On October 31 and December 22, 2022, the parties appeared before Judge Newson for a hearing on the court's motion to dismiss, during which both the petitioner and Luckett testified. In particular, the petitioner testified that, on the Friday before trial was set to begin

in the record whatsoever to support [it]. . . . In fact, the record . . . warrant[ed] an affirmative finding that [Luckett] provided competent and thorough representation . . . ." (Citation omitted.) The petitioner does not challenge that conclusion on appeal.

[5] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ."

on Monday, July 17, 2017, he and Luckett discussed the issue of withdrawal, and the petitioner told Luckett that he wanted to withdraw the case because he believed that he would be unsuccessful at trial without his main witness, whom Luckett had been unable to locate. The petitioner stated that, although Luckett gave him the weekend to think about the withdrawal, he did not need time to consider the issue because, "[i]n my mind, I thought the case was going to be decided on [the missing witness'] testimony." The petitioner testified that, when he got to court on the day trial was set to begin, he reiterated to Luckett that he did not want to go to trial without the missing witness. The petitioner further testified that, while in segregation at Northern Correctional Institution (Northern), the conditions of confinement affected his ability to make a knowing, intelligent, and voluntary decision about the withdrawal. He stated that, once he was released to general population at Northern, his thinking "clarified" and he did not think that anybody "in their right mind" would have withdrawn the habeas petition if they had possessed the evidence that Luckett had at the time of the withdrawal.[6] Additionally, the petitioner testified that, when he withdrew the petition, Judge Prats told him that it would be with prejudice and that the petitioner told the court that he would "take [his] chances" only "because [he] didn't understand what was going on." When asked if Judge Prats gave him the option to start trial and return for a second day of trial in the future, the petitioner initially indicated that he remembered that occurring

---

[6] The petitioner was referring to transcripts from criminal proceedings against one of the state's witnesses in the petitioner's criminal case. Counsel for the petitioner argued that these transcripts revealed that the witness had received consideration in exchange for his testimony against the petitioner. The petitioner explained that, prior to the withdrawal, "Luckett didn't explain to me the value of the transcripts he uncovered, so based on what I knew, I thought the case would be decided on [another missing witness] being present. And that was wrong."

and that it was his decision to decline that offer. When asked again on the second day of the hearing whether he remembered Judge Prats offering a second day of trial, however, the petitioner stated, "I was not in my right mind," and then said that he did not remember.

Luckett testified that he "vaguely recall[ed] having a discussion with [the petitioner at] Northern" around the time that the petitioner's actual innocence claim was dismissed. Luckett indicated that the petitioner "was wavering" at that time and "was not certain . . . until the date of the actual hearing" as to whether he wanted to withdraw the petition. Luckett testified that, prior to the day of the withdrawal, he did not talk to the petitioner about the possibility that the court would require that the withdrawal be with prejudice and that he advised the petitioner that he could withdraw the petition at any time prior to a hearing without prejudice, so long as the parties did not present any evidence, call any witnesses, or mark any exhibits. Luckett indicated that he learned only after speaking with Judge Prats in chambers that she may not allow a withdrawal without prejudice.

Luckett believed that he had "two conversations [with the petitioner] on the date of [the] actual withdrawal with prejudice. The first was [when] I went down to lock up, as I do with every habeas case, spoke with him in lock up, and . . . among other things, he said he wanted to withdraw. At that point, I told him it was a possibility." Luckett further testified that, when the petitioner was brought to the courtroom that morning, Luckett informed the petitioner that Judge Prats was going to allow the withdrawal with prejudice. Luckett stated that he did not remember whether he explained to the petitioner at that point in time what withdrawing with prejudice would mean. Luckett stated that, at some point on the morning of, but prior to, the withdrawal, he also told the petitioner: "I don't write the laws, so

listen to what the judge says. And, obviously, you know, if the judge says you can't ever do this again then I can't, you know, it's not like I make the rules. So, you have to listen to what the court says."

Following the hearing, the court denied the petitioner's habeas petition, finding that the petitioner was barred from litigating his claims due to the withdrawal with prejudice of the 2011 petition.[7] The court concluded that "the record wholly contradicts the petitioner's assertion that he was not adequately canvassed by Judge Prats before the withdrawal with prejudice was entered.

\* \* \*

"[T]he petitioner knowingly, intelligently, and voluntarily waived his right to pursue [his] claims . . . when he . . . [withdrew] the [2011] petition raising [the same] claims, knowing that the withdrawal would be entered with prejudice and knowing that with prejudice meant he could be prohibited from litigating those claims if he tried to raise them again in a future habeas." (Citations omitted; footnotes omitted; internal quotation marks omitted.) This uncertified appeal followed.

On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal because the court erroneously concluded that the petitioner's claims were barred by the withdrawal

---

[7] The court explained that it denied rather than dismissed the petition because, "[u]nder *Marra*, the prior withdrawal 'with prejudice' does not actually deprive the habeas court [of] jurisdiction over [the petitioner's claims], so the proper judgment is to deny [the] petition on the grounds that the petitioner is barred from litigating these issues, rather than dismiss it." See *Marra* v. *Commissioner of Correction*, supra, 174 Conn. App. 461 ("[The court's] determination that the prior action should be deemed to be withdrawn with prejudice does not implicate the subject matter jurisdiction of the court over this petition. Accordingly, [the court] should have denied, rather than dismissed, the petition, and the form of the judgment is thus improper.").

with prejudice of the 2011 petition. Before we address the petitioner's claims, we first set forth the legal principles and standard of review that guide our analysis.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Citation omitted; internal quotation marks omitted.) *Wright* v. *Commissioner of Correction*, 201 Conn. App. 339, 344–45, 242 A.3d 756 (2020), cert. denied, 336 Conn. 905, 242 A.3d 1009 (2021). We thus turn to the merits of the petitioner's

claim that Judge Newson erroneously concluded that the present habeas petition is barred by the withdrawal with prejudice of the 2011 petition.

"The term with prejudice means [w]ith loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim . . . . The disposition of withdrawal with prejudice exists within Connecticut jurisprudence. . . . Indeed, the disposition of withdrawal with prejudice is a logically compelling disposition in some circumstances. A plaintiff is generally empowered, though not without limitation, to withdraw a complaint before commencement of a hearing on the merits. . . . A plaintiff is not entitled to withdraw a complaint without consequence at such hearing. . . . The decision by a habeas court to condition a withdrawal of a habeas petition on that withdrawal being with prejudice is, when authorized, a decision left to that court's discretion." (Citations omitted; internal quotation marks omitted.) *Marra* v. *Commissioner of Correction*, supra, 174 Conn. App. 454–55.

In an effort to avoid the preclusive effect of the prior withdrawal with prejudice, the petitioner argues, on the basis of several purported ambiguities surrounding Judge Prats' canvass, that he did not knowingly, voluntarily, and intelligently waive his right to bring his claims.[8] In particular, the petitioner argues that (1) Luckett's statements to Judge Prats on the day of the withdrawal, and his testimony at the motion to dismiss hearing before Judge Newson, were "ambiguous" as to the advice that he gave the petitioner regarding the withdrawal; (2) Judge Prats' use of terms denoting

---

[8] Although the petitioner testified at the motion to dismiss hearing that his conditions of confinement affected his ability to make a knowing, intelligent, and voluntary decision about the withdrawal, he makes no claim on appeal that the court's findings were clearly erroneous because it did not sufficiently consider such testimony. Thus, we deem any such claim abandoned. See *Tetreault* v. *Eslick*, 271 Conn. 466, 471 n.5, 857 A.2d 888 (2004).

uncertainty as to the consequences of the withdrawal created further ambiguity in the canvass; (3) counsel for the respondent "amplified" the ambiguity by similarly using uncertain terms;[9] (4) the petitioner logically believed that his case was distinguishable from *Marra* because of Luckett's arguments before Judge Prats and Judge Sferrazza's statements at the July 6, 2017 motion to dismiss hearing;[10] and (5) the petitioner's responses during the canvass demonstrate that he did not understand the consequences of a withdrawal with prejudice. We are not persuaded.

"[A] habeas court may accept the withdrawal of a habeas petition 'with prejudice,' allowing the petitioner to waive any future habeas rights, as long as the withdrawal is knowing, voluntary, and intelligent." *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 785–86, 167 A.3d 952 (2017). "In evaluating the propriety of the court's finding, that an intentional and knowing waiver occurred, we are mindful that [t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility

___

[9] The petitioner cites the following statement of the respondent's counsel just prior to the court's acceptance of the withdrawal with prejudice: "There's certain recent case law that discusses [the issue of withdrawal with prejudice], but I'm not certain at what juncture it discusses the ramifications of with prejudice, forcing someone to withdraw with prejudice prior to the start of evidence, so I do believe that [the filing of a new petition is] something that we probably would object to, but it could be hashed out at a later point. That's my position."

[10] See footnote 3 of this opinion.

of witnesses and the weight to be given to their testimony. . . . Thus, the court's factual findings are entitled to great weight. . . . Furthermore, [a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 142, 81 A.3d 1209 (2013).

In the present case, we conclude that the court's finding that the petitioner knowingly, voluntarily, and intelligently waived his right to pursue the claims raised in the 2011 petition finds support in the record and, therefore, is not clearly erroneous. To the extent that the statements to the court by Luckett or the respondent's counsel created any ambiguity as to the consequences of withdrawal, those ambiguities were resolved by Judge Prats' thorough canvass of the petitioner. In particular, Judge Prats clearly informed the petitioner that, despite what Luckett may have told him, "if the court grants the withdrawal of this action, you understand that *you will be barred* in the future from raising these claims again in another habeas . . . ." (Emphasis added.)

Although at other points during the canvass Judge Prats used phrases denoting less certainty, such as "possibly [will] be . . . barred" and "possible ramifications," Judge Newson was not required, based on the totality of the canvass, to find that the petitioner did not understand the consequences of a withdrawal with prejudice. In *Mozell*, the habeas court "explained to the petitioner the '*potential* ramifications' of a withdrawal with prejudice" and stated that the "*risk*" of such withdrawal was that the respondent would "*likely*" oppose a new petition filed by the petitioner but that the court "[did not] know . . . what would happen . . . ."

(Emphasis added; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 759. Additionally, "[p]rior to finally accepting the withdrawal with prejudice, the court informed the petitioner that if the court accepted the withdrawal, there *could well be* significant impediments to bringing the same claims again. The court stated that *it could not predict with certainty what might happen* but said that the respondent would *likely* argue that he had been prepared before and that the petitioner ought not be able to bring the same claim again." (Emphasis added.) Id., 759 n.12. On appeal, this court concluded that the court had "adequately informed the petitioner of the ramifications" of a withdrawal with prejudice; id., 759; noting that, "[i]n light of our law regarding successive petitions, the court's advice was substantially accurate." Id., 759 n.12.

Accordingly, in the present case, Judge Prats' use of both certain and less certain terms to describe the consequences of a withdrawal with prejudice does not undermine Judge Newson's finding that the petitioner's waiver was knowing, voluntary, and intelligent. Instead, the record supports the conclusion, even more so than in *Mozell*, that the court adequately and accurately informed the petitioner that there was not only a possibility, but a certainty, that he would be barred from raising the same claims in a subsequent petition. From the petitioner's statements that he understood the court's explanation of the consequences and that he would "take [his] chances" by withdrawing the petition with prejudice, and his subsequent signing of the withdrawal form, Judge Newson reasonably could have concluded that the petitioner fully understood the consequences of a withdrawal with prejudice as Judge Prats explained them. As "the sole arbiter of the credibility of witnesses and the weight to be given their testimony";

(internal quotation marks omitted) *Fine* v. *Commissioner of Correction*, supra, 147 Conn. App. 142; Judge Newson was entitled to credit this evidence over the petitioner's later testimony at the motion to dismiss hearing that he "didn't understand what was going on" during the canvass.

Nevertheless, the petitioner maintains that his statement that he would "take [his] chances" in response to Judge Prats' canvass is evidence that he did not understand the preclusive effect of his withdrawal with prejudice and reflected his understanding that he could take his chances with a subsequent habeas petition. We are not persuaded. Judge Newson reasonably could have inferred from the petitioner's references to *Marra* during the canvass and from the petitioner's conduct following the withdrawal that he understood that he would be barred from pursuing his habeas claims unless he succeeded in distinguishing his case from *Marra* on appeal. Indeed, the petitioner immediately filed a motion for reconsideration following the withdrawal and, after the court denied that motion, filed an appeal to this court, in both of which the petitioner unsuccessfully attempted to distinguish his case from *Marra*. Had the petitioner believed that he could simply file a new habeas petition without consequence, he would have had no reason to file a motion for reconsideration nor to appeal Judge Prats' decision.[11] Instead, his claim in his prior habeas appeal that Judge Prats abused her discretion by requiring that his withdrawal of the 2011

[11] At oral argument before this court, counsel for the petitioner argued that, although the filing of the motion for reconsideration and the appeal suggest that the petitioner's counsel may have understood what "with prejudice" meant, it is not fair to impute that understanding to the petitioner. We disagree. It would have been fair for Judge Newson to impute that understanding to the petitioner given the evidence in the record that Judge Prats informed the petitioner of the consequences of a withdrawal with prejudice and that the petitioner stated that he understood those consequences.

petition be with prejudice is clear evidence that the petitioner fully understood the significance of that requirement.

Alternatively, the petitioner could have meant that he would take his chances that the respondent would not raise a collateral estoppel or res judicata defense if the petitioner were to file a subsequent petition raising the same claims and that the petitioner would then be permitted to proceed with his petition despite the prior withdrawal with prejudice. See *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 759 n.12 ("court's advice [regarding withdrawal with prejudice] was substantially accurate" where it informed petitioner that "it could not predict with certainty what might happen but . . . that the respondent would likely argue that he had been prepared before and that the petitioner ought not be able to bring the same claim again"). Because either inference is reasonable, and because we construe the evidence in the light most favorable to sustaining the court's judgment, the petitioner's argument fails. See *Cheshire Land Trust, LLC* v. *Casey*, 156 Conn. App. 833, 852, 115 A.3d 497 (2015) (court "is not required to draw only those inferences consistent with one view of the evidence, but may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical" (emphasis omitted; internal quotation marks omitted)).

As to the petitioner's statements during the canvass that he understood that he could withdraw his petition at any time prior to a hearing without prejudice, those statements merely demonstrate that he believed that the court should allow him to withdraw without prejudice, not that he did not understand the consequences should the court instead grant the withdrawal *with* prejudice. Notably, each of the statements cited by the petitioner to this effect either immediately followed his assertion that he understood the court's explanation of

the consequences of the withdrawal being "with prejudice" or was followed by the court's reiteration of those consequences.

Finally, the petitioner's argument that he believed that he was not bound by *Marra* due to Judge Sferrazza's statement at the July 6, 2017 hearing[12] is similarly without merit. The petitioner could not reasonably have believed that Judge Sferrazza's statement on July 6, 2017, applied to conduct that had not even occurred yet—namely, the withdrawal with prejudice on July 17, 2017, and the petitioner's filing of a subsequent petition raising the same claims.

Accordingly, we conclude that the court did not err in finding that the petitioner knowingly, voluntarily, and intelligently withdrew the 2011 petition with prejudice. The court thus properly determined that the petitioner is barred from litigating the claims raised in the present petition.[13] The petitioner has failed to present an issue that is debatable among jurists of reason, that a court could resolve in a different manner, or that deserves encouragement to proceed further. Therefore, we conclude that the court did not abuse its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

―――――――――――――

[12] See footnote 3 of this opinion.

[13] The respondent argues that the petitioner's conduct also constitutes deliberate bypass. See *Marra* v. *Commissioner of Correction*, supra, 174 Conn. App. 459–60 n.15. It is not necessary for us to determine whether the deliberate bypass rule applies here. Regardless of the label, the outcome of this appeal is the same—the petitioner is barred from raising the claims alleged in the 2011 petition. See id., 459–60.